CV 06 5726 7

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★   OCT 23 2006   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

GREGORY ANDERSON   (NSF)

                                    Plaintiff,                      Complaint

                                                                   Jury Trial Demand

        -against-

                                                        GARAUFIS, J.

THE CITY OF NEW YORK; POLICE DEPARTMENT CITY
OF NEW YORK (NYPD); JAMES C. DEAN, Inspector Commanding
Officer of the Emergency Services Unit; JOHN CONNOLLY,
Lieutenant, Employee Relations Department; SERGEANT O'KEEFE,
(Retired)Emergency Services Unit; SERGEANT BRADLEY, Emergency
Services Unit; MARILYN PAGAN, Detective, Office of Equal
Employment Opportunity; KEVIN DIAMOND, Detective, Emergency
Services Unit; RAMONO AMLETO, (Retired) Detective Emergency
Services Unit; WILLIAM MADIGAN, Detective Emergency Services
Unit; and JAMES LUDVICK, Detective Emergency Services Unit,
each individually and in their official capacities as employees of
the NYPD.

                                                        REYES, JR, M.

                                    Defendants.

------------------------------------------------------------------X

        The plaintiff GREGORY ANDERSON, by his attorneys, Jeffrey L. Goldberg, P.C., as and

for his complaint against defendants THE CITY OF NEW YORK; POLICE DEPARTMENT CITY

OF NEW YORK (NYPD); JAMES C. DEAN, Inspector Commanding Officer of the Emergency

Services Unit; JOHN CONNOLLY, Lieutenant, Employee Relations Department; SERGEANT

O'KEEFE, (Retired)Emergency Services Unit; SERGEANT BRADLEY, Emergency Services

Unit; MARILYN PAGAN, Detective, Office of Equal Employment Opportunity; KEVIN

DIAMOND, Detective, Emergency Services Unit; RAMONO AMLETO, (Retired) Detective

Emergency Services Unit; WILLIAM MADIGAN, Detective Emergency Services Unit; and

JAMES LUDVICK, Detective Emergency Services Unit, respectfully set forth and allege that:

## INTRODUCTION

1.    This is an action for equitable relief and money damages on behalf of the plaintiff GREGORY ANDERSON, (hereinafter referred to as "plaintiff") who was, and who is prospectively being deprived of his civil and constitutional rights as a result of the defendants' race, color and disability discrimination.

## JURISDICTION AND VENUE

2.    The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

     a.    Title VII of the Civil Rights Act of 1964 (hereinafter referred to as "Title VII") providing for injunctive and other relief against discrimination in employment on the basis of race and color;

     b.    Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, which prohibits covered employers from discriminating against an employee who is a "regarded as" disabled or is a "qualified individual with a disability;"

     c.    the Civil Rights Act of 1866, 42 U.S.C. § 1981, providing for the protection of all person's right to make and enforce contracts under the color of state law;

     d.    the Civil Rights Act of 1871, 42 U.S.C. § 1983, providing for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law;

     e.    the Civil Rights Act of 1871, 42 U.S.C. § 1985(3), providing for protection from conspiracies to interfere with a person's civil rights;

3.     The unlawful employment practices, violations of plaintiff's civil rights and tortious acts complained of herein were committed within the Eastern and Southern Districts of New York.

4.     The pendent jurisdiction of the federal district court is invoked with respect to the plaintiff's claims under New York State Executive Law § 296; New York City Administrative Code § 8-502; and New York City Administrative Code § 14-115; pursuant to 28 U.S.C. 1367, because the entire action before the court comprises one constitutional and civil rights case, and the claims arise out of the same common nucleus of facts and are such that the plaintiff would ordinarily be expected to try them in one judicial proceeding.

## PLAINTIFF

5.     Plaintiff is a male citizen of the United States of America and is over twenty-one (21) years of age, a resident of Orange County and is an employee of defendant THE CITY OF NEW YORK (hereinafter referred to as the "CITY") more specifically the Police Department City of New York (hereinafter referred to as the "NYPD"). For the purposes of this litigation, defendant CITY may be identified interchangeably using CITY or NYPD to identify the employer which is the CITY.

## DEFENDANTS

6.     Defendant CITY was and is a municipal corporation organized and existing under and by virtue of the law of the State of New York, and at all relevant times was plaintiff's employer, with its central offices in the county of New York, and diverse other offices and facilities throughout the State of New York.

7.     Defendant CITY is an employer within the definitions contained in 42 U.S.C. § 12111(5), employing more than fifteen (15) employees, and is engaged in an industry affecting

3

commerce.

8.      Defendants JAMES C. DEAN, Inspector Commanding Officer of the

Emergency Services Unit; JOHN CONNOLLY, Lieutenant, Employee Relations Department;

SERGEANT O'KEEFE, (Retired)Emergency Services Unit; SERGEANT BRADLEY,

Emergency Services Unit; MARILYN PAGAN, Detective, Office of Equal Employment

Opportunity; KEVIN DIAMOND, Detective, Emergency Services Unit; RAMONO

AMLETO, (Retired) Detective Emergency Services Unit; WILLIAM MADIGAN, Detective

Emergency Services Unit; and JAMES LUDVICK, Detective Emergency Services Unit.

## PROCEDURAL REQUIREMENTS

9.      Plaintiff has filed suit with this Court within the applicable statute of limitations

period.

10.     Plaintiff is not required to exhaust any administrative procedures prior to suit

under the Civil Rights Act of 1866, the Civil Rights Act of 1871 or the United States Constitution.

11.     On or about May 12, 2006, plaintiff sought assistance from the United States

Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC").

12.     On or about July 27, 2006, plaintiff received a Dismissal and Notice of Right to

Sue from the EEOC.

## BACKGROUND

13.     On or about August 30, 1993, plaintiff commenced employment with the

NYPD.

14.     In or about 2000, while working in the Eight Truck division, plaintiff found a

noose hanging over his locker.  Plaintiff spoke to his immediate supervisor, and the noose was

removed.

4

15.    Shortly thereafter, plaintiff was transferred from the Eight Truck division to the Two Truck division.

16.    Upon information and belief, the Two Truck Division was informed by unknown persons that plaintiff exercised his rights with the Office of Equal Employment Opportunity (OEEO) and complained about discriminatory conduct.

17.    Upon plaintiff's arrival into the Two Truck Division, Sergeant O'Keefe, his new supervisor, regularly called plaintiff names, including "asshole" and "incompetent."

18.    In or about August 2001, Sergeant O'Keefe told plaintiff that his co-workers did not want him in the Division.

19.    Upon information and belief, plaintiff was advised by another police officer that everyone in the Two Truck Division did not like him and wanted to remove him from that division. Shortly thereafter, plaintiff wrote a letter to the Police Commissioner addressing his concerns. Plaintiff subsequently met with Chief Wench and discussed his concerns about the Two Truck Division. Chief Wench acknowledged that "it appears that [plaintiff]was having problems" working within that division, but said the Two Truck Division was a "specialized unit" and that plaintiff may encounter difficulties from time to time.

20.    In or about 2002, plaintiff got into a physical altercation with Detective Ramono Amleto regarding a fuel card. Sergeant O'Keefe witnessed the incident, but did not break-up the altercation. Plaintiff spoke to the Commanding Officer about pressing assault charges on Detective Amleto, and the Commanding Officer stated that plaintiff's career would be over if he decided to do so. Based on this conversation, plaintiff decided not to press charges.

21.    In or about early 2003, plaintiff was transferred into the Four Truck Division.

22.    In the Four Truck division, Detective Billy Madigan verbally assaulted plaintiff,

and when plaintiff attempted to remove himself from the situation by leaving the room,
Detective Madigan would block his path to the exit. Sergeant White was in another room
when this altercation occurred and did not come out to break it up until plaintiff notified him of
this incident. Sergeant White failed to take any further action.

23. On or about August 17, 2003, plaintiff filed a complaint with Sergeant Bradley
about his experiences in the Two Truck Division. Specifically, plaintiff's complaint informed
Sergeant Bradley of the following events:

    a. On one occasion, plaintiff met with Sergeant O'Keefe who requested
that plaintiff sign a performance evaluation. During this meeting,
Sergeant O'Keefe proceeded to call plaintiff names and used
profanity. Plaintiff asked Sergeant O'Keefe why he was angry and
why he was calling plaintiff names, but Sergeant O'Keefe refused to
respond. Instead, Sergeant O'Keefe said to plaintiff, "You are a
waste to me" and sent him to another borough on desk duty. At that
time, plaintiff was on limited capacity duty due to a medical
condition.

    b. Shortly thereafter, plaintiff overheard Sergeant O'Keefe speaking to
another supervisor about "taking care of [plaintiff]" in order to have
plaintiff removed from the division. As a result of this conversation,
there were numerous attempts to issue Command Disciplines to
plaintiff for false and unsubstantiated allegations. Specifically,
Command Disciplines were issued to plaintiff and Command
Disciplines that were attempted to be issued to plaintiff for the

following incidents:

c.  While on patrol one day, a Lieutenant accused plaintiff of sleeping

while on duty. Plaintiff denied these allegations, citing that he was

taking a medication that made him feel drowsy at times, but that

plaintiff's immediate supervisors were aware of his medical condition

and the medication that he was taking.  Plaintiff challenged this

Command Discipline by filing a complaint with OEEO.  As a result of

OEEO's investigation, the Command Discipline was reduced to

"failure to be alert on duty."  Thereafter, plaintiff's supervisor ordered

him to sign the Command Discipline for this incident, however the

form that he was ordered to sign was blank – it did not contain any

narrative regarding the substance of the Command Discipline being

issue to plaintiff.  Plaintiff refused to sign this form, but after repeated

threats of having this Command Discipline adjudicated in the Trial

Room, in the presence of plaintiff's union representative, Co.

Inspector Bonnano, Sergeant White and Lieutenant D'Angelis,

plaintiff signed the blank form.

d.  On another occasion, plaintiff was accused of being late to work.  On

the day prior to receiving this Command Discipline, the roll call sheet

which indicates when police officers are scheduled to report to work

was missing.  On the following day, plaintiff reported to work at 7:00

p.m. since this was the time he was normally scheduled to report into

work.  Upon arrival, plaintiff was informed that he was going to

receive a Command Discipline for reporting two hours late to work. Plaintiff disputed this claim with a Four Truck Division supervisor, stating that the roll call sheet was missing on the prior day and that he was normally scheduled to report to work at 7:00 p.m. Despite plaintiff's claims, his supervisor insisted on giving him a Command Discipline. At that time, plaintiff requested permission to go to OEEO to file a complaint and his supervisor, Lieutenant Serras, refused to grant plaintiff permission to leave and file his OEEO complaint. Plaintiff called OEEO and scheduled an appointment to discuss this incident. Shortly thereafter, plaintiff's supervisor returned and informed him that heI could go to OEEO. After plaintiff met with OEEO and filed a complaint, plaintiff was later informed that the Command Discipline for coming in late was not going to be issued to him.

24.    During a meeting with crew members, Sergeant O'Keefe stated that he wanted to "kick [plaintiff's] ass." During the same meeting, Detective Jimmy Ludvick said that plaintiff was an "asshole" and a "prick" and that nobody liked him in the Division. Sergeant O'Keefe also asked plaintiff if he "wanted to take this to the next level."

25.    Upon information and belief, Sergeant Bradley did not investigate or take any further action based on plaintiff's allegations.

26.    On or about August 19, 2004, plaintiff filed a complaint with OEEO against Detective William Madigan which stated the following incidents of discriminatory conduct:

    a.  Plaintiff was not offered the same opportunities for training that other similarly situated Caucasian co-workers received.

    b.  Plaintiff was denied preferred assignments for no valid reason while other similarly situated Caucasian co-workers received these assignments.

    c.  Similarly situated Caucasian detectives were constantly assigned overtime hours, while plaintiff was not given the same opportunities to work overtime hours.

    d.  Plaintiff was constantly threatened with disciplinary action by Sergeant O'Keefe and other supervisors.

    e.  Plaintiff was constantly being supervised by other co-workers.

27.    On or about December 4, 2004 while in the Four Truck Division, Detective Kevin Diamond called plaintiff a "boy," a "rat" and also stated that he hoped that plaintiff died. Plaintiff reported this incident to OEEO, but upon information and belief no further action was taken.

28.    Upon information and belief, while plaintiff was in the Four Truck Division, Lieutenant D'Angelis conducted investigations that ultimately lead to plaintiff being administratively transferred to Disciplinary Command.

29.    Upon information and belief, while plaintiff was in the Four Truck Division Sergeant Juan White would make derogatory statements about him. Specifically, Sergeant White called plaintiff an "asshole" and "incompetent." Sergeant White made these statements to plaintiff in the station house in front of other co-workers. Upon information and belief, Sergeant White would talk about plaintiff to other co-workers while he was on patrol.

30.     On numerous occasions, Sergeant White also would make plaintiff leave the station house upon his arrival.

31.     On one occasion, plaintiff was not feeling well and called out sick to the sick desk. Sergeant White called the sick desk and stated that plaintiff was not actually sick, that plaintiff was "goofing off" and requested that plaintiff come into work.

32.     On the next day after plaintiff called out sick, he went to his personal physician. Plaintiff was suffering from a 104 degree fever and his physician diagnosed him as suffering from strep throat. Plaintiff's doctor gave him a medical note to submit to the sick desk. Shortly thereafter, Plaintiff was examined by the NYPD Surgeon who stated that his doctor's previous diagnosis was incorrect – that plaintiff did not have strep throat and he was not sick.

33.     On or about January 31, 2005, plaintiff filed a complaint with OEEO regarding Sergeant White.

34.     On or about August 22, 2005, in retaliation for filing numerous complaints with plaintiff's supervisors and OEEO, plaintiff was notified by Inspector James C. Dean – Commanding Officer of the Emergency Services Unit that he was going to be administratively transferred out of that Unit. Shortly thereafter, plaintiff filed a complaint with Police Commissioner Raymond W. Kelly regarding his transfer.

35.     Commencing on September 9, 2005, plaintiff was administratively transferred to Level I – (Disciplinary) Command Monitoring Program where his performance was to be closely monitored and evaluated for a minimum of twelve months.

36.     Shortly thereafter, plaintiff requested to meet with the Commanding Officer of the 113th Precinct regarding the terms and conditions of employment which had deteriorated, and ultimately caused him to suffer health problems. The Commanding Officer never

contacted plaintiff to schedule a meeting.

37.    On or about January 29th, 2006, plaintiff experienced chest pains which was later diagnosed as paricardiosys and was out of work for a period of three months.

38.    On or about February 21, 2006 more than one year after filing the majority of plaintiff's complaints, he received notification from OEEO regarding their investigation findings.  OEEO found that:

    a.   The allegations against Detective Kevin Diamond alleging race discrimination based on a disparaging remark was deemed Unsubstantiated.

    b.   The allegation of race discrimination based on the denial of chauffeur training was deemed Unsubstantiated.

    c.   The allegation of retaliation based on the denial of overtime was deemed Unfounded.

    d.   The allegation against Inspector James Dean alleging retaliation based on temporary assignment to the ESU Medical Unit was deemed Exonerated.

    e.   The allegation of retaliation based on a denial of an individual vacation day was deemed Exonerated.

39.    Upon return to work, plaintiff attempted to schedule another meeting with the Commanding Officer to discuss the deteriorating terms and conditions of his employment and the effect on his health, but to date the Commanding Officer has not attempted to meet with plaintiff.

40.    Plaintiff's most recent performance evaluations have been unsatisfactory despite

the fact that he has always performed very well on the job.

41.    Based on the foregoing, plaintiff believes that he is being discriminated on basis of his race (African-American), color, disability and retaliated against for exercising his statutorily protected rights in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Americans with Disabilities Act of 1991.

**VIOLATIONS AND CLAIMS ALLEGED**

**COUNT I**
**DISABILITY DISCRIMINATION**
**IN VIOLATION OF**
**TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990**

42.    Plaintiff re-alleges paragraphs 1 through 41 and incorporates them by reference as paragraphs 1 through 41 of Count I of this Complaint.

43.    At all relevant times, plaintiff was perceived as disabled within the meaning of 42 U.S.C. §12102. More particularly, plaintiff repeated attempts to meet with his supervisors in the NYPD in order to discuss his job situation, how it affected his disability and whether he would require a reasonable accommodation were ignored by the NYPD.

44.    Defendant NYPD through its agents defendants JAMES C. DEAN, Inspector Commanding Officer of the Emergency Services Unit; JOHN CONNOLLY, Lieutenant, Employee Relations Department; SERGEANT O'KEEFE, (Retired)Emergency Services Unit; SERGEANT BRADLEY, Emergency Services Unit; MARILYN PAGAN, Detective, Office of Equal Employment Opportunity; KEVIN DIAMOND, Detective, Emergency Services Unit; RAMONO AMLETO, (Retired) Detective Emergency Services Unit; WILLIAM MADIGAN, Detective Emergency Services Unit; and JAMES LUDVICK, Detective Emergency Services Unit, failure to treat plaintiff in a manner comparable to other similarly situated disabled and/or perceived to be disabled individuals, constitutes discrimination against plaintiff with respect to the

terms, conditions, or privileges of employment.

     45.     Defendant's actions constitute a violation of 42 U.S.C. §12112(b)(5)(A).

**COUNT II**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF**
**TITLE I OF THE AMERICANS WITH DISABILITIES ACT OF 1990**

     46.     Plaintiff re-alleges paragraphs 1 through 45 and incorporates them by reference as paragraphs 1 through 45 of Count II of this Complaint.

     47.     At all relevant times, plaintiff was disabled within the meaning of 42 U.S.C. §12102. More particularly, plaintiff was a qualified individual with physical impairments that substantially limited one or more of his major life activities.

     48.     Defendant CITY and NYCFPF through its agents, Defendants FRANCIS S. PFLUM; ANTHONY D. BLAU; ARTHUR E. HELFT; MUTHIAH SUKUMARAN; and CHRISTINE LEE, failure to treat plaintiff in a manner comparable to other similarly situated disabled and/or perceived to be disabled individuals created a hostile work environment and constitutes discrimination against plaintiff with respect to the terms, conditions, or privileges of employment.

     49.     Defendant's actions constitute a violation of 42 U.S.C. §12112(b)(5)(A).

**COUNT III**
**RACE AND COLOR DISCRIMINATION**
**IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

     50.     Plaintiff re-alleges paragraphs 1 through 49 and incorporates them by reference as paragraphs 1 through 49 of Count III of this Complaint.

     51.     Plaintiff alleges that defendant CITY through its agents engaged in a pattern and practice of discrimination against him with respect to the terms, conditions and privileges of

employment because of the plaintiff's race and color in violation of 42 U.S.C. § 2000e-2.

52.     As part of its pattern and practice of employment discrimination, defendant CITY through its agents treated plaintiff in a manner indicative of race and color discrimination, with respect to its investigation, analysis, and subsequent cover-up, of their discriminatory behavior.

53.     Defendant CITY knew or should have known about race and color discrimination in the workplace because of their prior history of discriminatory conduct against the plaintiff and other similarly situated individuals.

54.     Defendant CITY failed and refused to take appropriate action to end the discriminatory treatment and conditions which plaintiff was subjected to, which was clearly motivated by race and color discrimination in a clear demonstration of bad faith.

55.     That as a result of the discriminatory acts of defendant CITY through its agents, plaintiff suffered depression and anxiety.

56.     Defendants acted in an outrageous and systematic pattern of oppression, bad faith and cover-up, directed at plaintiff and continued from in or around 2000, until this day.

57.     As a result of the acts of defendants under color of law, plaintiff suffered emotional distress, humiliation and embarrassment, medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT IV
## RETALIATION
## IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

58.     Plaintiff re-alleges paragraphs 1 through 57 and incorporates them by reference as paragraphs 1 through 57 of Count IV of this Complaint.

59.     Plaintiff alleges that defendant CITY through its agents engaged in various

14

retaliatory actions against plaintiff as a result of his opposition to race and color discrimination and as a result of his filing such complaints with the NYPD and the EEOC, in violation of 42 U.S.C. § 2000e-3(a).

60.    That as a result of the illegal acts of defendant CITY through its agents, plaintiff suffered depression and anxiety.

## COUNT V
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

61.    Plaintiff re-alleges paragraphs 1 through 60 and incorporates them by reference as paragraphs 1 through 60 of Count V of this Complaint.

62.    Plaintiff alleges that Defendant CITY through its agents engaged in various severe and hostile actions towards plaintiff as a result of his opposition to race and color discrimination and as a result of his filing such complaints with the NYPD and the EEOC.

63.    That as a result of the severe and hostile acts of the Defendant CITY through its agents, plaintiff suffered depression, anxiety and loss of job opportunities.

## COUNT VI
## RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

64.    Plaintiff re-alleges paragraphs 1 through 63 and incorporates them by reference as paragraphs 1 through 63 of Count VI of this Complaint.

65.    That by the aforesaid discriminatory acts and omissions of defendants acting individually and acting in their capacities as supervisory and/or administrative officials of Defendant CITY interfered with plaintiff's right to enforce contracts under the color of State

Law.

66.    That the purpose of defendants in so acting was to prevent plaintiff, through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York including but not limited to enjoy his right to freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, and deprivation of life, liberty, and property without due process of law.

67.    Pursuant to their conduct, the defendants acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

68.    As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

**COUNT VII**
**RETALIATION**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981**

69.    Plaintiff re-alleges paragraphs 1 through 68 and incorporates them by reference as paragraphs 1 through 68 of Count VII of this Complaint.

70.    Plaintiff alleges that defendants engaged in various retaliatory actions against him acting individually and in their capacities as supervisory and/or administrative officials of defendant CITY as a result of his opposition to race and color discrimination.

71.    That the purpose of defendants in so acting was to prevent plaintiff, through

economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York.

72.    Pursuant to their conduct, the defendants acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

73.    As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

### COUNT VIII
### HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF
### THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

74.    Plaintiff re-alleges paragraphs 1 through 73 and incorporates them by reference as paragraphs 1 through 73 of Count VIII of this Complaint.

75.    Plaintiff alleges that defendants engaged in various severe and hostile actions against him acting individually and in their capacities as supervisory and/or administrative officials of defendant CITY as a result of his opposition to race and color discrimination.

76.    That the purpose of defendants in so acting was to prevent plaintiff, through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York.

77.    Pursuant to their conduct, the defendants acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

78.    As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

**COUNT IX**
**RACE AND COLOR DISCRIMINATION**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983 CONSPIRACY**

79.    Plaintiff re-alleges paragraphs 1 through 78 and incorporates them by reference as paragraphs 1 through 78 of Count IX of this Complaint.

80.    Defendants under color of law, conspired with one another to deprive plaintiff of his constitutional rights, including the rights: to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

81.    Defendants acting individually and in their official capacities as supervisory and/or administrative officers of defendant CITY under color of law, and having been fully advised that plaintiff, a Hispanic male, was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiff, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of his rights to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

82.    Defendants in acting to deprive plaintiff of his civil rights, failed to thoroughly

investigate his allegations of race and color discrimination in the workplace.

83.    Defendants in acting to deprive plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights.

84.    Defendants acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at plaintiff and continuing from in or around 2000, until this day.

85.    As a result of the acts of the defendants under color of law, plaintiff suffered emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

**COUNT X**
**RETALIATION**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

86.    Plaintiff re-alleges paragraphs 1 through 85 and incorporates them by reference as paragraphs 1 through 85 of Count X of this Complaint.

87.    Defendants under color of law, conspired with one another to deprive plaintiff of his pension and constitutional rights, including the rights: to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

88.    Defendants acting individually and in their official capacities as supervisory and/or administrative officers of defendant CITY, under color of law, and having been fully advised that plaintiff was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiff, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiff from

19

continuing deprivations of his rights to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

89.    Defendants in acting to deprive plaintiff of his civil rights, failed to thoroughly investigate his allegations of discriminatory conduct in the workplace.

90.    Defendants in acting to deprive plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights.

91.    Defendants acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at plaintiff and continuing from in or around 2000, until this day.

92.    As a result of the acts of the defendants under color of law, plaintiff suffered emotional distress, monetary damage, loss of pension rights, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

**COUNT XI**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

93.    Plaintiff re-alleges paragraphs 1 through 92 and incorporates them by reference as paragraphs 1 through 92 of Count XI of this Complaint.

94.    Defendants under color of law, conspired with one another to deprive plaintiff of his constitutional rights, including the rights: to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free

from deprivation of life, liberty, and property without due process of law.

95.    Defendants acting individually and in their official capacities as supervisory and/or administrative officers of defendant CITY, under color of law, and having been fully advised that plaintiff was being deprived of his pension and constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiff, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of his rights to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

96.    Defendants in acting to deprive plaintiff of his civil rights, failed to thoroughly investigate his allegations of discriminatory conduct in the workplace.

97.    Defendants in acting to deprive plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights.

98.    Defendants acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at plaintiff and continuing from in or around 2000, until this day.

99.    As a result of the acts of the defendants under color of law, plaintiff suffered emotional distress, monetary damage, loss of pension rights, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT XII
## CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1985(3)

100.    Plaintiff re-alleges paragraphs 1 through 99 and incorporates them by reference as paragraphs 1 through 99 of Count XII of this Complaint.

101.    That by the aforesaid discriminatory acts and omissions of defendants acting individually and in their official capacities as supervisory and/or administrative officials of the CITY and/or independent contractor to defendant CITY conspired, planned, agreed and intended to act in manner to thereby cause economic and psychological injury to plaintiff.

102.    That the purpose of the defendants in so acting was to prevent plaintiff from obtaining the benefits to which he was entitled under the law and from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York including but not limited to enjoy his right to freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

103.    Pursuant to their conspiracy, defendants acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of discrimination and bad faith, all in violation of 42 U.S.C. § 1985 (3).

104.    As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, physical illness, and monetary damages.

## COUNT XIII
## RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

105.    Plaintiff re-alleges paragraphs 1 through 104 and incorporates them by reference as paragraphs 1 through 104 of Count XIII of this Complaint.

106.    New York State Executive Law § 296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The same legal standards that apply to Title VII claims apply to claims brought under this law.

## COUNT XIV
## RETALIATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

107.    Plaintiff re-alleges paragraphs 1 through 106 and incorporates them by reference as paragraphs 1 through 106 of Count XIV of this Complaint.

108.    New York State Executive Law § 296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The law also makes it unlawful to create an atmosphere where retaliation is encouraged and/or tolerated. The same legal standards that apply to Title VII apply to claims brought under this law.

## COUNT XV
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

109.    Plaintiff re-alleges paragraphs 1 through 108 and incorporates them by reference as paragraphs 1 through 108 of Count XV of this Complaint.

110.    New York State Executive Law § 296 et seq., makes it unlawful to discriminate

against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The law also makes it unlawful to create a severe and hostile environment where retaliation, race and color discrimination are encouraged and/or tolerated. The same legal standards that apply to Title VII apply to claims brought under this law.

## COUNT XVI
## RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF
## NEW YORK CITY ADMINSTRATIVE CODE § 8-502

111.    Plaintiff re-alleges paragraphs 1 through 110 and incorporates them by reference as paragraphs 1 through 110 of Count XVI of this Complaint.

112.    New York City Administrative Code § 8-502, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The same legal standards that apply to Title VII claims apply to claims brought under New York City Administrative Code § 8-502.

## COUNT XVII
## RETALIATION
## IN VIOLATION OF
## NEW YORK CITY ADMINSTRATIVE CODE § 8-502

113.    Plaintiff re-alleges paragraphs 1 through 112 and incorporates them by reference as paragraphs 1 through 112 of Count XVII of this Complaint.

114.    The New York City Administrative Code § 8-502, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The law also makes it unlawful to create an atmosphere where retaliation is encouraged and/or tolerated. The same legal standards that apply to Title VII apply to claims brought under this law.

## COUNT XVIII
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE § 8-502

115.    Plaintiff re-alleges paragraphs 1 through 114 and incorporates them by reference as paragraphs 1 through 114 of Count XVIII of this Complaint.

116.    New York City Administrative Code § 8-502, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The law also makes it unlawful to create a severe and hostile environment where retaliation, race and color discrimination are encouraged and/or tolerated. The same legal standards that apply to Title VII apply to claims brought under this law.

## COUNT XIX
## RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF
## NEW YORK CITY ADMINSTRATIVE CODE § 14-115

117.    Plaintiff re-alleges paragraphs 1 through 116 and incorporates them by reference as paragraphs 1 through 116 of Count XIX of this Complaint.

118.    New York Administrative Code § 14-115(a), gives the police commissioner broad discretion to impose punishment on a member of the force including dismissal from the force. However, such punishment cannot be for impermissible reasons such race and color discrimination. Such arbitrary and capricious decisions would be impermissible and violative of the spirit and purpose of the statute.

## COUNT XX
## RETALIATION
## IN VIOLATION OF
## NEW YORK CITY ADMINSTRATIVE CODE § 14-115

119.    Plaintiff re-alleges paragraphs 1 through 118 and incorporates them by reference as paragraphs 1 through 118 of Count XX of this Complaint.

120.    New York Administrative Code § 14-115(a), gives the police commissioner broad discretion to impose punishment on a member of the force including dismissal from the force. However, such punishment cannot be for impermissible reasons such as retaliation. Such arbitrary and capricious decisions would be impermissible and violative of the spirit and purpose of the statute.

**COUNT XXI**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF**
**NEW YORK CITY ADMINSTRATIVE CODE § 14-115**

121.    Plaintiff re-alleges paragraphs 1 through 120 and incorporates them by reference as paragraphs 1 through 120 of Count XXI of this Complaint.

122.    New York Administrative Code § 14-115(a), gives the police commissioner broad discretion to impose punishment on a member of the force including dismissal from the force. The law also makes it unlawful to create a severe and hostile environment where retaliation, race and color discrimination are encouraged and/or tolerated. Such arbitrary and capricious decisions would be impermissible and violative of the spirit and purpose of the statute.

**JURY TRIAL**

123.    Plaintiff demands a trial by jury of all issues in this action that are so triable.

## **PRAYER FOR RELIEF**

**Wherefore,** plaintiff demands compensatory and punitive damages from these

defendants' jointly and severally, in an amount to be determined at trial, plus any and all

available statutory remedies, both legal and equitable, and interests and costs.

Dated:        Lake Success, N.Y.
              October 19, 2006

                                        Respectfully submitted,

                                        By: _____
                                             Eric Sanders (ES0224)

                                        Jeffrey L. Goldberg, P.C.
                                        Attorneys for Plaintiff
                                        2001 Marcus Avenue, Suite S10
                                        Lake Success, NY 11042
                                        516-775-9400