UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

GREGORY ANDERSON

                                      Plaintiff,

        -against-

THE CITY OF NEW YORK; RAYMOND W. KELLY, Police
Commissioner; NELDRA M. ZEIGLER, Deputy Commissioner,
Office of Equal Employment Opportunity; JAMES C. DEAN,
Inspector, Former Commanding Officer of the Emergency Services
Unit; MICHAEL O'KEEFE, Retired Sergeant, Emergency
Services Squad 2; JAMES LUDVICK, Detective, Emergency Services
Squad 2; JUAN WHITE, Sergeant, Emergency Services Squad 4;
KEVIN DIAMOND, Detective, Emergency Services Squad 4;
WILLIAM MADIGAN, Detective, Emergency Services Squad 4,
each being sued individually and in their official capacities as
employees of the NYPD.

                                        Defendants.

-------------------------------------------------------------------------------X

Amended Complaint

Jury Trial Demand

06 CV 5726 (NGG)(RER)

Judge Nicholas Garaufis

      The plaintiff GREGORY ANDERSON, by his attorneys, Jeffrey L. Goldberg, P.C., as and

for his amended complaint against defendants' RAYMOND W. KELLY; NELDRA M. ZEIGLER;

JAMES C. DEAN; MICHAEL O'KEEFE; JAMES LUDVICK; JUAN WHITE; KEVIN

DIAMOND; and WILLIAM MADIGAN.

## **INTRODUCTION**

      1.      This is an action for equitable relief and money damages on behalf of the plaintiff

GREGORY ANDERSON, (hereinafter referred to as "plaintiff") who was, and who is

prospectively being deprived of his civil and constitutional rights as a result of the defendants' race

and color discrimination and retaliation.

## JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1965, 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by:

        a.  Title VII of the Civil Rights Act of 1964 (hereinafter referred to as "Title VII") providing for injunctive and other relief against discrimination in employment on the basis of race and color;

        b.  the Civil Rights Act of 1866, 42 U.S.C. § 1981, providing for the protection of all person's right to make and enforce contracts under the color of state law; and

        c.  the Civil Rights Act of 1871, 42 U.S.C. § 1983, providing for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

3.      The unlawful employment practices, violations of plaintiff's civil rights and tortious acts complained of herein were committed within the Eastern and Southern Districts of New York.

4.      The pendent jurisdiction of the federal district court is invoked with respect to the plaintiff's claims under New York State Executive Law § 296; and New York City Administrative Code § 8-502,  court comprises one constitutional and civil rights case, and the claims arise out of the same common nucleus of facts and are such that the plaintiff would ordinarily be expected to try them in one judicial proceeding.

## PLAINTIFF

5.      Plaintiff is a male citizen of the United States of America and is over twenty-one (21) years of age, a resident of Orange County and is an employee of defendant THE CITY OF

NEW YORK (hereinafter referred to as the "CITY") more specifically the Police Department City of New York (hereinafter referred to as the "NYPD"). For the purposes of this litigation, defendant CITY may be identified interchangeably using CITY or NYPD to identify the employer which is the CITY.

## DEFENDANTS

6.      Defendant CITY was and is a municipal corporation organized and existing under and by virtue of the law of the State of New York, and at all relevant times was plaintiff's employer, with its central offices in the county of New York, and diverse other offices and facilities throughout the State of New York.

7.      Defendant CITY is an employer within the definitions contained in 42 U.S.C. § 2000-E, employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

8.      Defendants' RAYMOND W. KELLY, Police Commissioner; NELDRA M. ZEIGLER, Deputy Commissioner, Office of Equal Employment Opportunity; JAMES C. DEAN, Inspector, Former Commanding Officer of the Emergency Services Unit; MICHAEL O'KEEFE, Retired Sergeant, Emergency Services Squad 2; JAMES LUDVICK, Detective, Emergency Services Squad 2; JUAN WHITE, Sergeant, Emergency Services Squad 4; KEVIN DIAMOND, Detective, Emergency Services Squad 4; WILLIAM MADIGAN, Detective, Emergency Services Squad 4, each being sued individually and in their official capacities as employees of the NYPD.

## PROCEDURAL REQUIREMENTS

9.      Plaintiff has filed suit with this Court within the applicable statute of limitations period.

10.    Plaintiff is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1866, the Civil Rights Act of 1871 or the United States Constitution.

11.    On or about May 12, 2006, plaintiff sought assistance from the United States Equal Employment Opportunity Commission (hereinafter referred to as the "EEOC").

12.    On or about August 28, 2006, plaintiff received a Dismissal and Notice of Right to Sue from the EEOC.

## BACKGROUND

13.    On or about August 30, 1993, plaintiff was appointed as a police officer with the NYPD.

14.    Plaintiff alleges that in or around 1999, he was transferred into Emergency Services Squad 8.

15.    Plaintiff alleges that in or around 1999, it was commonly known throughout the Special Operations Division that Emergency Services Squad 8, was referred to as the "Slave Ship" because of the number of African-American officers assigned there.

16.    Plaintiff alleges that in or around 1999, Police Officer Peter Lennarello assigned to Emergency Services Squad 8, referred to his former partner Police Officer Curtis Garvey as a "nigger."

17.    Plaintiff alleges that while he was partners with Police Officer Curtis Garvey, the management of the Emergency Services Unit under the direct supervision of defendant JAMES C. DEAN refused to train them so they had to train themselves through trial and error.

18.    Plaintiff alleges that while he was partners with Police Officer Curtis Garvey, the management of the Emergency Services Unit under the direct supervision of defendant JAMES C. DEAN refused to assign them overtime tours to work.

19.    Plaintiff alleges that in or around 2000, while assigned to Emergency Services Squad 8, he found a noose hanging over his locker.  He spoke to his immediate supervisor, Sergeant Poolt and the noose was removed.

20.    Plaintiff alleges that shortly thereafter, he was transferred from Emergency Services Squad 8, to Emergency Services Squad 2.

21.    Plaintiff alleges that, personnel assigned to Emergency Services Squad 2, were informed by unknown persons that he complained to the Office of Equal Employment Opportunity under the direct supervision of defendant NELDRA M. ZEIGLER about the racial discrimination and retaliation that he was experiencing while assigned to Emergency Services.

22.    Plaintiff alleges that upon plaintiff's assignment to Emergency Services Squad 2, defendant MICHAEL O'KEEFE, his direct supervisor, regularly called him names, including "asshole" and "incompetent."

23.    Plaintiff alleges that on or about May 12, 2001, he found a noose hanging next to his bin in the garage where the Department vehicles are located at the 90th Precinct.

24.    Plaintiff alleges that in or around August 2001, defendant MICHAEL O'KEEFE told him that his co-workers did not want him in the Division because he filed OEEO complaints.

25.    Plaintiff alleges that he was advised by another police officer that everyone in the Emergency Services Squad did not like him and wanted him transferred from the division.

26.    Plaintiff alleges that shortly thereafter, he wrote a letter to defendant RAYMOND W. KELLY to complain about the racial discrimination and retaliation he was experiencing while assigned to Emergency Services.

27.    Plaintiff alleges that subsequently he met with Chief of Staff Former Chief

Joseph P. Wench to complain about the racial discrimination and retaliation he was experiencing while assigned to Emergency Services.

28.    Plaintiff alleges that Chief of Staff Former Chief :Joseph P. Wench acknowledged that it appeared that [he]was having problems working within that division, but that the Two Truck Division was a "specialized unit" and that he may encounter difficulties from time to time.

29.    Plaintiff alleges that in or around early 2003, he was transferred into Emergency Services Squad.

30.    Plaintiff alleges that while assigned to Emergency Services Squad 4, defendant WILLIAM MADIGAN verbally threatened him, and when he attempted to defuse the situation by leaving the room, the defendant physically blocked his path.

31.    Plaintiff alleges that defendant JUAN WHITE was told about defendant WILLIAM MADIGAN's conduct but did not take any disciplinary action against him.

32.    Plaintiff alleges that on or about August 17, 2003, he filed a complaint with OEEO about the racial discrimination and retaliation he was experiencing while assigned to Emergency Services.  Specifically, plaintiff alleged the following discriminatory actions occurred:

    a.  Plaintiff alleges that on one occasion, he met with defendant MICHAEL O'KEEFE who requested that he sign his performance evaluation.  During this meeting, plaintiff alleges that the defendant call him names and used profanity towards him; and

    b.  Plaintiff alleges that shortly thereafter, he overheard defendant MICHAEL O'KEEFE speaking to another supervisor about "taking

care of [him]."   Plaintiff alleges that as a result of this conversation, there were numerous attempts by supervisors assigned to Emergency Services to unfairly discipline him.

33.    Plaintiff alleges that during a meeting with crew members, defendant MICHAEL O'KEEFE told him that he wanted to "kick [plaintiff's] ass."

34.    Plaintiff alleges that during the same meeting, defendant JAMES LUDVICK called him an "asshole" and a "prick" and that nobody liked him in the Division.

35.    Plaintiff alleges that defendant MICHAEL O'KEEFE also asked him if he "wanted to take this to the next level."

36.    Upon information and belief, defendant NELDRA M. ZEIGLER did not fully investigate his allegations nor did she take any further action with respect to the hostile work environment he was enduring.

37.    Plaintiff alleges that in or around August 2004, he filed a complaint with the Internal Affairs Bureau about the racial discrimination and retaliation that he was experiencing while assigned to Emergency Services.

38.    Plaintiff alleges that on or about August 19, 2004, he filed a complaint with OEEO, Case No.: 229s04, alleging the following discriminatory actions:

    a.  Plaintiff alleges that he was not offered the same opportunities for training that other similarly situated Caucasian officers received;

    b.  Plaintiff alleges that he was denied preferred assignments for no valid reason while other similarly situated Caucasian officers received those same assignments;

c.  Plaintiff alleges that similarly situated Caucasian officers were constantly assigned overtime hours, while he was not given the same opportunities to work overtime hours;

d.  Plaintiff alleges that he was constantly threatened with unfair disciplinary action by supervisors assigned to Emergency Services;

e.  Plaintiff alleges that the Caucasian officers would withhold information from him;

f.  Plaintiff alleges that the Caucasian officers would constantly attempt to keep him on edge with hostile language towards him;

g.  Plaintiff alleges that his opinions about Emergency Service operations were never asked as opposed to the Caucasian officers whose opinions were always invited; and

h.  Plaintiff alleges that he was being constantly over-supervised by the Caucasian officers.

39.    Plaintiff alleges that on or about October 13, 2004, he sent a request through his prior attorney to the Chief of Personnel's Office for his personnel records in particular his disciplinary file.

40.    Plaintiff alleges that on or before October 17, 2004, he notified defendant JUAN WHITE that his locker was damaged by some unknown individual(s).  As a result of the damage to his locker, he had to get dressed in the Men's Room or the Garage.

41.    Plaintiff alleges that the locker room was a hostile and intimidating environment.

42.    Plaintiff alleges that on or about December 4, 2004 while assigned to

Emergency Services Squad 4, defendant KEVIN DIAMOND called him a "boy and a "rat."

43.     Plaintiff alleges that defendant KEVIN DIAMOND also told him that he hoped that he die.

44.     Plaintiff alleges that when he reported this incident to OEEO, they took no action.

45.     Plaintiff alleges that on or about December 7, 2004, he sent an OEEO complaint through his prior attorney to defendant RAYMOND W. KELLY alleging that he has and continues to be the victim of alleged racial discrimination while assigned to Emergency Services Squad 4.

46.     Plaintiff alleges that defendant RAYMOND W. KELLY did not refer the above-mentioned allegations to defendant NELDRA M. ZEIGLER.

47.     Plaintiff alleges that defendant RAYMOND W. KELLY did not refer the above-mentioned allegations to any investigative unit.

48.     Plaintiff alleges that defendant RAYMOND W. KELLY did not take any affirmative employment action with respect to the above-mentioned allegations to investigate his claims of racial discrimination.

49.     Plaintiff alleges that defendant RAYMOND W. KELLY's insensitivity to such matters, are indicative of a pattern and pattern of discriminatory animus that exists within the NYPD with respect to minority police officers.

50.     Plaintiff alleges that on or about December 10, 2004, he sent an OEEO complaint through his prior attorney to defendant RAYMOND W. KELLY alleging that he has and continues to be the victim of alleged racial discrimination while assigned to Emergency Services Squad 4.

51.    Plaintiff alleges that defendant RAYMOND W. KELLY did not refer the above-mentioned allegations to defendant NELDRA M. ZEIGLER.

52.    Plaintiff alleges that defendant RAYMOND W. KELLY did not refer the above-mentioned allegations to any investigative unit.

53.    Plaintiff alleges that defendant RAYMOND W. KELLY did not take any affirmative employment action with regard to the above-mentioned allegations to investigate his claims of racial discrimination.

54.    Plaintiff alleges that defendant RAYMOND W. KELLY's insensitivity to such matters is indicative of a pattern and pattern of discriminatory animus that exists within the NYPD with respect to minority police officers.

55.    Plaintiff alleges that while assigned to Emergency Services for approximately five and one-half (5 ½) years, he was not afforded the same opportunities as other similarly situated Caucasian officers.

56.    Plaintiff alleges that while assigned to Emergency Services he was intentionally being isolated within the unit where there were only ten (10) percent African-Americans, thirty (30) out of three hundred (300) officers assigned there, he being the only African-American in his squad.

57.    Plaintiff alleges that while assigned to Emergency Services Squad 4, defendant JUAN WHITE would make derogatory statements about him.

58.    Plaintiff alleges that defendant JUAN WHITE called him an "asshole" and "incompetent."

59.    Plaintiff alleges that defendant JUAN WHITE made these above-mentioned statements in front of other members assigned to Emergency Services Squad 4.

60.     Plaintiff alleges that on numerous occasions, defendant JUAN WHITE would make him leave the stationhouse upon his arrival.

61.     Plaintiff alleges that on or about January 7, 2005, defendant KEVIN DIAMOND called him a "boy."

62.     Plaintiff alleges that on or about January 7, 2005, defendant KEVIN DIAMOND told him that "I hope you die you rat!"

63.     Plaintiff alleges that on or about January 7, 2005, he filed a complaint with regard to the above-mentioned allegations to OEEO.

64.     Plaintiff alleges that on or about January 31, 2005, he filed a complaint with OEEO regarding defendant JUAN WHITE.

65.     Plaintiff alleges that on or about August 22, 2005, in retaliation for filing numerous complaints with his supervisors and OEEO, defendant JAMES C. DEAN administratively transferred him back to the 113th Precinct.

66.     Plaintiff alleges that on or about August 22, 2005, he sent a UF 49 to defendants' RAYMOND W. KELLY; NELDRA M. ZEIGLER and John Connolly alleging that he has and continues to be the victim of alleged racial discrimination and retaliation while assigned to Emergency Services Squad 4.

67.     Plaintiff alleges in this memorandum that other African-American officers within Emergency Services are suffering from the same conditions of racial discrimination.

68.     Plaintiff alleges that defendant RAYMOND W. KELLY did not refer the above-mentioned allegations to defendant NELDRA M. ZEIGLER.

69.     Plaintiff alleges that defendant RAYMOND W. KELLY referred the above-mentioned allegations to any investigative unit.

70.    Plaintiff alleges that defendants' RAYMOND W. KELLY and NELDRA M. ZEIGLER did take any affirmative employment action with regard to the above-mentioned allegations to investigate his claims of racial discrimination and retaliation.

71.    Plaintiff alleges that, defendants' RAYMOND W. KELLY and NELDRA M. ZEIGLER's insensitivity to such matters are indicative of a pattern and pattern of discriminatory animus that exists within the NYPD with respect to minority police officers.

72.    Plaintiff alleges that on or about August 29, 2005, he sent a UF 49 to Secretary Richard T. Tirelli, Detective Endowment Association alleging that he was administratively transferred by defendant JAMES C. DEAN in retaliation for his prior complaints of racial discrimination he endured while assigned to Emergency Services.

73.    Plaintiff alleges that on or about September 9, 2005, he was notified by Deputy Inspector Donna G. Jones, Commanding Officer Performance Analysis Section that he was being placed on Level I Monitoring, which is a Command Level Monitoring Program where his performance was to be closely monitored and evaluated for a minimum of twelve months.

74.    Plaintiff alleges that on or about September 20, 2005, he sent a UF 49 to Deputy Inspector Donna G. Jones, Commanding Officer Performance Analysis Section that he wishes to appeal his evaluation and that his placement into the Command Level Monitoring Program was in retaliation for complaining about racial discrimination and retaliation he endured while assigned to Emergency Services.

75.    Plaintiff alleges that on or about February 21, 2006 more than one year after filing the majority of his allegations, he received a letter from defendant NELDRA M. ZEIGLER with the result of her findings.  Defendant NELDRA M. ZEIGLER found that:

    a.    The allegations against defendant KEVIN DIAMOND alleging race

discrimination based on a disparaging remark was deemed Unsubstantiated;

    b.  The allegation of race discrimination based on the denial of chauffeur training was deemed Unsubstantiated;

    c.  The allegation of retaliation based on the denial of overtime was deemed Unfounded;

    d.  The allegation against defendant JAMES C. DEAN alleging retaliation based on temporary assignment to the ESU Medical Unit was deemed Exonerated; and

    e.  The allegation of retaliation based on a denial of an individual vacation day was deemed Exonerated.

76.    Plaintiff alleges that he attempted to schedule a meeting with the Commanding Officer of the 113th Precinct to discuss the deteriorating terms and conditions of his employment and the effect on his health, but to date the Commanding Officer has not met with him.

77.    Plaintiff alleges that his most recent performance evaluations have been unsatisfactory despite the fact that he has always performed very well on the job.

78.    Based on the foregoing, plaintiff feels that his rights were and are being violated by defendants' CITY; RAYMOND W. KELLY; NELDRA M. ZEIGLER; JAMES C. DEAN; MICHAEL O'KEEFE; JAMES LUDVICK; JUAN WHITE; KEVIN DIAMOND; and WILLIAM MADIGAN.

## VIOLATIONS AND CLAIMS ALLEGED

### COUNT I
### RACE AND COLOR DISCRIMINATION
### IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

79.    Plaintiff re-alleges paragraphs 1 through 78 and incorporates them by reference as paragraphs 1 through 78 of Count I of this Complaint.

80.    Plaintiff alleges that defendant CITY through its agents engaged in a pattern and practice of discrimination against him with respect to the terms, conditions and privileges of employment because of the plaintiff's race and color in violation of 42 U.S.C. § 2000e-2.

81.    As part of its pattern and practice of employment discrimination, defendant CITY through its agents treated plaintiff in a manner indicative of race and color discrimination, with respect to its investigation, analysis, and subsequent cover-up, of their discriminatory behavior.

82.    Defendant CITY knew or should have known about race and color discrimination in the workplace because of their prior history of discriminatory conduct against the plaintiff and other similarly situated individuals.

83.    Defendant CITY failed and refused to take appropriate action to end the discriminatory treatment and conditions which plaintiff was subjected to, which was clearly motivated by race and color discrimination in a clear demonstration of bad faith.

84.    That as a result of the discriminatory acts of defendant CITY through its agents, plaintiff suffered depression and anxiety.

85.    Defendant acted in an outrageous and systematic pattern of oppression, bad faith and cover-up, directed at plaintiff and continued from in or around 1999, until this day.

86.    As a result of the acts of defendant under color of law, plaintiff suffered

emotional distress, humiliation and embarrassment, medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT II
## RETALIATION
## IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

87.     Plaintiff re-alleges paragraphs 1 through 86 and incorporates them by reference as paragraphs 1 through 86 of Count II of this Complaint.

88.     Plaintiff alleges that defendant CITY through its agents engaged in various retaliatory actions against plaintiff as a result of his opposition to race and color discrimination and as a result of his filing such complaints with the NYPD and the EEOC, in violation of 42 U.S.C. § 2000e-3(a).

89.     That as a result of the illegal acts of defendant CITY through its agents, plaintiff suffered depression and anxiety.

## COUNT III
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

90.     Plaintiff re-alleges paragraphs 1 through 89 and incorporates them by reference as paragraphs 1 through 89 of Count III of this Complaint.

91.     Plaintiff alleges that defendant CITY through its agents engaged in various severe and hostile actions towards plaintiff as a result of his opposition to race and color discrimination and as a result of his filing such complaints with the NYPD and the EEOC.

92.     That as a result of the severe and hostile acts of the defendant CITY through its agents, plaintiff suffered depression, anxiety and loss of job opportunities.

## COUNT IV
## RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

93.     Plaintiff re-alleges paragraphs 1 through 92 and incorporates them by reference as paragraphs 1 through 92 of Count IV of this Complaint.

That by the aforesaid discriminatory acts and omissions of defendants' RAYMOND W. KELLY; NELDRA M. ZEIGLER; JAMES C. DEAN; MICHAEL O'KEEFE; JAMES LUDVICK; JUAN WHITE; KEVIN DIAMOND; and WILLIAM MADIGAN acting individually and acting in their capacities as public officials of defendant CITY interfered with plaintiff's right to enforce contracts under the color of State Law.

94.     That the purpose of defendants' in so acting was to prevent plaintiff, through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York including but not limited to enjoy his right to freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, and deprivation of life, liberty, and property without due process of law.

95.     Pursuant to their conduct, the defendants' acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

96.     As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

**COUNT V**
**RETALIATION**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981**

97.    Plaintiff re-alleges paragraphs 1 through 96 and incorporates them by reference as paragraphs 1 through 96 of Count V of this Complaint.

98.    Plaintiff alleges that defendants' RAYMOND W. KELLY; NELDRA M. ZEIGLER; JAMES C. DEAN; MICHAEL O'KEEFE; JAMES LUDVICK; JUAN WHITE; KEVIN DIAMOND; and WILLIAM MADIGAN engaged in various retaliatory actions against him acting individually and in their capacities as public officials of defendant CITY as a result of his opposition to race and color discrimination.

99.    That the purpose of defendants' in so acting was to prevent plaintiff, through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York.

100.    Pursuant to their conduct, the defendants' acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

101.    As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

**COUNT VI**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981**

102.    Plaintiff re-alleges paragraphs 1 through 101 and incorporates them by reference

as paragraphs 1 through 101 of Count VI of this Complaint.

103.    Plaintiff alleges that defendants' RAYMOND W. KELLY; NELDRA M. ZEIGLER; JAMES C. DEAN; MICHAEL O'KEEFE; JAMES LUDVICK; JUAN WHITE; KEVIN DIAMOND; and WILLIAM MADIGAN engaged in various severe and hostile actions against him acting individually and in their capacities as public officials of defendant CITY as a result of his opposition to race and color discrimination.

104.    That the purpose of defendants' in so acting was to prevent plaintiff, through economic and psychological intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York.

105.    Pursuant to their conduct, the defendants' acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

106.    As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, loss of employment opportunities, and other monetary damages.

**COUNT VII**
**RACE AND COLOR DISCRIMINATION**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983 CONSPIRACY**

107.    Plaintiff re-alleges paragraphs 1 through 106 and incorporates them by reference as paragraphs 1 through 106 of Count VII of this Complaint.

108.    Defendants' RAYMOND W. KELLY; NELDRA M. ZEIGLER; JAMES C. DEAN; MICHAEL O'KEEFE; JAMES LUDVICK; JUAN WHITE; KEVIN DIAMOND; and WILLIAM MADIGAN under color of law, personally interfered with and deprived plaintiff of

his constitutional rights, including the rights: to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

109.    Defendants' RAYMOND W. KELLY; NELDRA M. ZEIGLER; JAMES C. DEAN; MICHAEL O'KEEFE; JAMES LUDVICK; JUAN WHITE; KEVIN DIAMOND; and WILLIAM MADIGAN acting individually and in their official capacities as public officials of defendant CITY under color of law, and having been fully advised that plaintiff, an African-American male, was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiff, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of his rights to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

110.    Defendants' in acting to deprive plaintiff of his civil rights, failed to thoroughly investigate his allegations of race and color discrimination in the workplace.

111.    Defendants' in acting to deprive plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights.

112.    Defendants' acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at plaintiff and continuing from in or around 1999, until this day.

113.    As a result of the acts of the defendants' under color of law, plaintiff suffered

emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT VIII
## RETALIATION
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

114.    Plaintiff re-alleges paragraphs 1 through 113 and incorporates them by reference as paragraphs 1 through 113 of Count VIII of this Complaint.

115.    Defendants' RAYMOND W. KELLY; NELDRA M. ZEIGLER; JAMES C. DEAN; MICHAEL O'KEEFE; JAMES LUDVICK; JUAN WHITE; KEVIN DIAMOND; and WILLIAM MADIGAN under color of law, personally interfered with and deprived plaintiff of his pension and constitutional rights, including the rights: to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

116.    Defendants' RAYMOND W. KELLY; NELDRA M. ZEIGLER; JAMES C. DEAN; MICHAEL O'KEEFE; JAMES LUDVICK; JUAN WHITE; KEVIN DIAMOND; and WILLIAM MADIGAN acting individually and in their official capacities as public officials of defendant CITY, under color of law, and having been fully advised that plaintiff was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiff, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of his rights to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due

process of law, all in violation of 42 U.S.C. § 1983.

117.    Defendants' in acting to deprive plaintiff of his civil rights, failed to thoroughly investigate his allegations of discriminatory conduct in the workplace.

118.    Defendants' in acting to deprive plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights.

119.    Defendants' acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at plaintiff and continuing from in or around 1999, until this day.

120.    As a result of the acts of the defendants' under color of law, plaintiff suffered emotional distress, monetary damage, loss of pension rights, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

**COUNT IX**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF**
**THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983**

121.    Plaintiff re-alleges paragraphs 1 through 120 and incorporates them by reference as paragraphs 1 through 120 of Count IX of this Complaint.

122.    Defendants' RAYMOND W. KELLY; NELDRA M. ZEIGLER; JAMES C. DEAN; MICHAEL O'KEEFE; JAMES LUDVICK; JUAN WHITE; KEVIN DIAMOND; and WILLIAM MADIGAN under color of law, personally interfered with and deprived plaintiff of his constitutional rights, including the rights: to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law.

123.    Defendants' RAYMOND W. KELLY; NELDRA M. ZEIGLER; JAMES C. DEAN; MICHAEL O'KEEFE; JAMES LUDVICK; JUAN WHITE; KEVIN DIAMOND; and WILLIAM MADIGAN acting individually and in their official capacities as public officials of defendant CITY, under color of law, and having been fully advised that plaintiff was being deprived of his pension and constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiff, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of his rights to enjoy freedom of speech, movement, association and assembly, to petition his government for redress of his grievances, to be secure in his person, to be free from unreasonable searches and seizures, to enjoy privacy, to be free from deprivation of life, liberty, and property without due process of law, all in violation of 42 U.S.C. § 1983.

124.    Defendants' in acting to deprive plaintiff of his civil rights, failed to thoroughly investigate his allegations of discriminatory conduct in the workplace.

125.    Defendants' in acting to deprive plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights.

126.    Defendants' acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at plaintiff and continuing from in or around 1999, until this day.

127.    As a result of the acts of the defendants' under color of law, plaintiff suffered emotional distress, monetary damage, loss of pension rights, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT X
## RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

128.    Plaintiff re-alleges paragraphs 1 through 127 and incorporates them by reference as paragraphs 1 through 127 of Count X of this Complaint.

129.    New York State Executive Law § 296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color.  The same legal standards that apply to Title VII claims apply to claims brought under this law.

## COUNT XI
## RETALIATION
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

130.    Plaintiff re-alleges paragraphs 1 through 129 and incorporates them by reference as paragraphs 1 through 129 of Count XI of this Complaint.

131.    New York State Executive Law § 296 et seq., makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color.  The law also makes it unlawful to create an atmosphere where retaliation is encouraged and/or tolerated.  The same legal standards that apply to Title VII apply to claims brought under this law.

## COUNT XII
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

132.    Plaintiff re-alleges paragraphs 1 through 131 and incorporates them by reference as paragraphs 1 through 131 of Count XII of this Complaint.

133.    New York State Executive Law § 296 et seq., makes it unlawful to discriminate

against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The law also makes it unlawful to create a severe and hostile environment where retaliation, race and color discrimination are encouraged and/or tolerated. The same legal standards that apply to Title VII apply to claims brought under this law.

## COUNT XIII
## RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF
## NEW YORK CITY ADMINSTRATIVE CODE § 8-502

134.    Plaintiff re-alleges paragraphs 1 through 133 and incorporates them by reference as paragraphs 1 through 133 of Count XIII of this Complaint.

135.    New York City Administrative Code § 8-502, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The same legal standards that apply to Title VII claims apply to claims brought under New York City Administrative Code § 8-502.

## COUNT XIV
## RETALIATION
## IN VIOLATION OF
## NEW YORK CITY ADMINSTRATIVE CODE § 8-502

136.    Plaintiff re-alleges paragraphs 1 through 135 and incorporates them by reference as paragraphs 1 through 135 of Count XIV of this Complaint.

137.    The New York City Administrative Code § 8-502, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color. The law also makes it unlawful to create an atmosphere where retaliation is encouraged and/or tolerated. The same legal standards that apply to Title VII apply to claims brought under this law.

## COUNT XV
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## NEW YORK CITY ADMINISTRATIVE CODE § 8-502

138.    Plaintiff re-alleges paragraphs 1 through 137 and incorporates them by reference as paragraphs 1 through 137 of Count XV of this Complaint.

139.    New York City Administrative Code § 8-502, makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment on the basis of race and color.  The law also makes it unlawful to create a severe and hostile environment where retaliation, race and color discrimination are encouraged and/or tolerated.  The same legal standards that apply to Title VII apply to claims brought under this law.

## JURY TRIAL

140.    Plaintiff demands a trial by jury of all issues in this action that are so triable.

## PRAYER FOR RELIEF

**Wherefore,** plaintiff demands compensatory and punitive damages from these defendants' jointly and severally, in an amount to be determined at trial, plus any and all available statutory remedies, both legal and equitable, and interests and costs.

Dated:        Lake Success, N.Y.
              January 8, 2007

                              Respectfully submitted,

                              By: _____
                                  Eric Sanders (ES0224)

                              Jeffrey L. Goldberg, P.C.
                              Attorneys for Plaintiff
                              2001 Marcus Avenue, Suite S160
                              Lake Success, NY 11042
                              516-775-9400